**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**ROGER MOULTON,**

Plaintiff,

v.

**CREDIT PROTECTION ASSOCIATION, L.P.,**

Defendant.

Civil Case No.: 1:15-cv-13077-GAO

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)**

## I. INTRODUCTION

On September 24, 2015, Defendant Credit Protection Association, L.P. ("Defendant") moved to dismiss Plaintiff Roger Moulton's ("Plaintiff") claims for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*; the Massachusetts Consumer Protection Act ("MCPA"), M.G.L. ch. 93A, *et seq.*; and intrusion upon his seclusion.

Defendant's arguments, however, misunderstand each of Plaintiff's claims, or attempt to impose an impossible burden for Plaintiff to meet at the pleading stage. For example, Defendant contends that because Plaintiff merely alleges that Defendant used an automatic telephone dialing system, Plaintiff's TCPA claim should be dismissed. But what Defendant fails to address or acknowledge is that the TCPA imposes liability on a caller for use of an automatic telephone dialing system *or* a prerecorded voice – both need not be present. While Plaintiff's allegations about an automatic telephone dialing system would alone be sufficient, this is ultimately irrelevant, because Plaintiff clearly pleads that the calls were made using a prerecorded voice.

With respect to Plaintiff's FDCPA claim, Defendant argues that Plaintiff has failed to allege facts giving rise to an inference that the debt was a consumer debt, or that Defendant was a debt collector. However, both Plaintiff's Complaint and the public record are replete with information sufficient to give rise to these inferences and allow Plaintiff's FDCPA claim to proceed.

Defendant also claims that there is no "intrusion upon seclusion" invasion of privacy claim in Massachusetts, and even if there was, Plaintiff has failed to state a claim for such an invasion. Both arguments are incorrect. Massachusetts recognizes both statutory and common law invasion of privacy claims, and 60 calls to an individual who is in no way affiliated with the

debt attempting to be collected – particularly after Plaintiff informed Defendant that it had the wrong number – are sufficiently invasive to give rise to an invasion of privacy cause of action sounding in intrusion upon seclusion.

Finally, Defendant argues that Plaintiff's MCPA claim fails because Plaintiff's TCPA and FDCPA claims fail. However, as briefly explained above, and in more detail below, Plaintiff states a viable TCPA and FDCPA claim, and therefore, a viable MCPA claim.

## II. FACTUAL BACKGROUND & PROCEDURAL HISTORY

The facts of this case are simple. From April 2015 through July 2015, Defendant placed over 60 calls to Plaintiff's cellular telephone number. (Am. Compl., ¶¶ 12-13.) These calls were all calls made to collect a debt from two different third-parties, one named Alice and one named Matt. *Id.* at ¶ 14. These calls all used a prerecorded voice, and they were also made using an automatic telephone dialing system. *Id.* at ¶¶ 15-16. Plaintiff did not consent to such calls, and in fact affirmatively informed Defendant that it had the wrong number, but the calls continued. *Id.* at ¶ 18.

On July 14, 2015, Plaintiff, through his counsel, reached out via email to Defendant's counsel in an effort to resolve this matter pursuant to Massachusetts' pre-litigation notice regime described in M.G.L. c. 93A. When this effort proved unsuccessful, on August 3, 2015, Plaintiff filed a complaint alleging that the calls violated the TCPA, FDCPA, and invaded his privacy. (Dkt. 1.) Plaintiff also served Defendant's counsel with a formal demand letter pursuant to M.G.L. ch. 93A. On September 3, 2015, Plaintiff amended his complaint to add a violation of M.G.L. ch. 93A. (Dkt 8.) Defendant filed its Motion to Dismiss Plaintiff's Amended Complaint on September 24, 2015. (Dkt. 13.)

## III. LEGAL STANDARD

In order to survive a Rule 12(b)(6) Motion to Dismiss for failure to state a claim, a plaintiff "must state facts sufficient to raise a right to relief above the speculative level such that the claim is plausible on its face." *Karp v. Gap, Inc.*, Case No. 13-11600, 2014 U.S. Dist. LEXIS 138313, *2 (D. Mass. Sept. 29, 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Conclusory allegations and a mere recitation of the elements constituting the cause of action, unsupported by facts, are insufficient." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint must be pled in order "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Decotiis v. Whittemore*, 635 F.3d 22, 29 (1st Cir. 2011). In evaluating a Rule 12(b)(6) Motion, courts "must take the factual allegations in the complaint as true." *Karp*, 2014 U.S. Dist. LEXIS 138313, at *2.

## IV. DISCUSSION

### A. TCPA

In order to state a claim under the TCPA for calls made to a cellular telephone, a plaintiff must plead that (1) a call was placed to a cellular telephone (2) through the use of an automatic dialing system and/or prerecorded or artificial voice (3) without the prior express consent of the recipient. 47 U.S.C. § 227(b)(1)(A). If consent is an issue, the burden is on the defendant to show that the required prior express consent was obtained. 23 F.C.C.R. 559, 565 (Jan. 4. 2008); *see also Lamont v. Furniture North, LLC*, Case No. 14-cv-036, 2014 U.S. Dist. LEXIS 51927, *5 (D.N.H. April 15, 2014) ("In a TCPA claim, whether or not express consent is given is not an element of the claim, but is instead an affirmative defense[.]").

Defendant's sole argument against Plaintiff's TCPA claim pertains to the second element: that Plaintiff failed to adequately plead that Defendant used an automatic telephone dialing system. This is both wrong and irrelevant.

**1. The TCPA Makes it Unlawful to Make Calls Without Consent Using an Automatic Telephone Dialing System *or* a Prerecorded Voice.**

First, as quoted above, the TCPA prohibits making calls to cellular telephones without consent using "any automatic telephone dialing system or an artificial or prerecorded voice[.]" 47 U.S.C. 227(b)(1)(A) (emphasis added). This means just what it says: calls made either using an automatic telephone dialing system or an artificial or prerecorded voice are actionable. *See, e.g., King v. Time Warner Cable*, Case no. 14-cv-2018, 2015 U.S. Dist. LEXIS 88044, *12 (S.D.N.Y. July 7, 2015) ("[The TCPA's] plain language applies to both pre-recorded voice messages and use of an ATDS; they are alternative theories of liability."); *Iniguez v. CBE Group*, 969 F. Supp. 2d 1241, 1247 (E.D. Cal. 2013) ("Plaintiff's complaint alleges both that Defendant used an automatic telephone dialing system and that Defendant's system utilized an artificial voice. Either allegation is sufficient on its own to support Plaintiff's claims."). Accordingly, even if Plaintiff's allegations about an automatic telephone dialing system were wholly inadequate, this would not matter because Plaintiff has pled that all of the calls used a prerecorded or artificial voice.

**2. Defendant's Arguments About the Adequacy of Plaintiff's Allegations Elevate Form over Substance.**

Nonetheless, in the interest of thoroughness, Plaintiff assumes that Defendant's arguments about the adequacy of Plaintiff's automatic telephone dialing system allegations are meant to apply equally to Plaintiff's pre-recorded voice allegations. But in making its arguments, Defendant elevates form over substance. What more can truly be said about a call made using a voice that was not a live person beyond that the voice was prerecorded or artificial? Must a

Plaintiff allege that the inflections in the voice seemed "off," or that the voice did not stop when Plaintiff spoke, or that the voice identified itself as a recording? Such allegations would add nothing, nor would they further Rule 8's goal that a complaint "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Decotiis* 635 F.3d at 29. To dismiss Plaintiff's claims because he did not plead why he believed the voice was prerecorded would be akin to dismissing a traffic accident claim because, while plaintiff alleged that he saw the traffic light was red when defendant sped through it, plaintiff failed to plead the precise shade of red or why he perceived that particular color as "red."

Simply put, a prerecorded voice is a prerecorded voice – there is really nothing more to it. Pleading that a voice was prerecorded is pleading a fact – not a legal conclusion – which must be taken as true here, no matter that Congress used the same language in crafting the statute. Plaintiff should not be foreclosed from using ordinary language to describe a fact, simply because Congress used that same ordinary language in crafting a statute. Plaintiff heard the prerecorded voice when he answered the calls, knew from his own experience that it was a prerecorded voice, and pled accordingly. (Am. Compl. ¶¶ 5, 16, 25); *see Iniguez,* 969 F. Supp. 2d at 1247 ("The allegation that Defendant's system utilized an artificial voice is based on Plaintiff's own experience when she answered Defendant's phone calls, and it is therefore not vague or conclusory."). Accordingly, Plaintiff's allegations here give defendant the fair notice required by the Federal Rules, and allege an entitlement to relief that exceeds plausibility, particularly in light of "experience and common sense." *Decotiis*, 635 F.3d at 29. .

**3. Though not Necessary, Plaintiff Adequately Pleads that Defendant Used an Automatic Telephone Dialing System.**

Assuming *arguendo* that Plaintiff was required to plead that Defendant used an automatic telephone dialing system, in addition to a prerecorded voice, Plaintiff's allegations are still

sufficient to survive Defendant's Motion. An automatic telephone dialing system is defined as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The FCC recently reiterated that it is capacity – not only present ability – that matters. FCC Order, FCC 15-72, ¶ 15 (July 10, 2015). For example, a piece of equipment can possess the requisite "capacity" even if it requires the addition of software to fulfill that capacity. *Id.* at ¶ 18. Yet despite this extremely broad definition, many courts have explicitly noted the difficulty that a TCPA plaintiff faces in being able to know and describe the type of calling system utilized by a defendant prior to discovery. As a result, those courts have permitted a plaintiff to simply allege the statutory definition of an ATDS. *See, e.g.*, *Blair v. CBE Group Inc.,* No. 13-cv-134-MMA(WVG), 2013 U.S. Dist. LEXIS 68715, *11 (S.D. Cal. May 13, 2013); *Torres v. Nat'l Enter. Sys., Inc.*, No. 12-C-2267, 2012 U.S. Dist. LEXIS 110514, *10 (N.D. Ill. Aug. 7, 2012); *In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1253, 1260 (S.D. Cal. 2012) (same, and noting that "while additional facts might be helpful, further facts are not required to move beyond the pleading stage."); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1010-11 (N.D. Ill. 2010).

In *Blair v. CBE Group, Inc.*, the court denied defendant's motion to dismiss, stating that "[w]hether [defendant's] calling technology has the requisite capacity for TCPA purposes is a factual question that is not properly resolved without formal discovery or at this stage of the proceedings." *Id*. at *4. The *Blair* court noted that plaintiff's allegation that the defendant had "used an automatic dialing system which had the capacity to produce or store and dial numbers randomly or sequentially . . . to place telephone calls to Plaintiff's cellular telephone" was "sufficient under Rule 8's pleading standard." *Id.* (citing *Hickey v. Voxernet LLC*, 887 F. Supp.

2d 1125, 1129–30 (W.D.Wash. 2012)); *In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1253, 1260 (S.D.Cal.2012); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1010–11 (N.D. Ill. 2010); *Robinson v. Midland Funding, LLC*, 2011 U.S. Dist. LEXIS 40107 at *8–9 (S.D.Cal. Apr. 13, 2011).

The court in *Torres v. Nat'l Enter. Sys., Inc.* spoke even more strongly to this issue. In *Torres*, defendant argued that the amended complaint lacked sufficient details to plausible suggest it was using an automatic telephone dialing system. In response, the court wrote:

> [Defendant] … is seeking to address evidentiary issues that are premature at this juncture. … Nor would it even be reasonable to hold plaintiffs in TCPA cases to the standard proposed by [defendant] since it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication …. Under such a standard, defendants … would be virtually immune to TCPA claims.

*Torres*, 2012 U.S. Dist. LEXIS 110514, *10-11. Like the plaintiffs in *Blair* and *Torres*, Plaintiff here has pled that the equipment used to make calls have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator. (Am. Compl. ¶¶ 4, 15, 24.) Accordingly, should the Court find it necessary to reach the sufficiency of Plaintiff's allegations regarding an automatic telephone dialing system, Plaintiff respectfully requests that the Court follow the well-reasoned decisions in *Blair* and *Torres*, and decline impose on Plaintiff the near-impossible pleading standard proposed by Defendant here.

**B. <u>FDCPA</u>**

Plaintiff alleges violations of 15 U.S.C. § 1692d(5), which makes it unlawful for a debt collector to "caus[e] a telephone to ring … repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" in connection with the collection of a debt. "Debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of

the transaction are primarily for personal, family, or household purposes[.]" 15 U.S.C. § 1692a(5). "Debt collector" is relevantly defined as "any person … who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6).

Defendant argues that Plaintiff fails to plead facts sufficient to make plausible that the debt upon which Defendant sought to collect was a debt as defined in the statute, or that Defendant was a "debt collector" as defined in the statute. However, as with Defendant's TCPA arguments, both arguments here elevate form over substance, and seek to impose an impossibly high bar on FDCPA plaintiffs receiving wrong-number debt collection calls.

**1. Plaintiff Sufficiently Alleges a "Debt" and that Defendant was Acting as a "Debt Collector."**

As Defendant points out, "non-debtors cannot reasonably be expected to know the specific nature of a third party's debt without the benefit of discovery." *Corson v. Accounts Receivable Management, Inc.*, Case No. 13-01903, 2013 U.S. Dist. LEXIS 112282, *10 (D.N.J. Aug. 8, 2013). What Defendant omits, however, is the *Corson* court's reminder that "a court's determination of plausibility … requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citations omitted). Plaintiff here pleads that he did not owe the debt at issue. (Am. Compl. ¶¶ 14, 27.) But even more than that, Plaintiff pleads that the calls were made in an attempt to collect a debt from "Alice" and "Matt," though Plaintiff did not plead their last names. *Id.* at ¶ 14. While it is perhaps possible that the debt sought to be collected were debts for "Alice, Inc." and "Matt, Inc.," experience and common sense suggest that the much more likely explanation is that "Alice" and "Matt" are individuals, not corporations, who incurred a debt as defined in the statute. Notably, the *Corson* court found sufficient plaintiff's allegations that the calls were made to collect a debt from a third-party, who the *Corson* plaintiff pled by name in the

complaint. *Id.* These allegations are sufficient at this stage to give rise to a plausible inference that the debt was a debt covered by the statute, and that Defendant was acting as a debt collector as defined in the statute.

**2. Documents in the Public Record Support that Defendant was Seeking to Collect a "Debt" and Acting as a "Debt Collector."**

Should the allegations contained in Plaintiff's complaint be insufficient, "[a] court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss." *Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008); *see also Estate of Patterson v. City of Pittsburgh*, Case No. 11-1021, 2011 U.S. Dist. LEXIS 118344, n.2 (W.D. Pa. Oct. 13, 2011) ("Although this website is not part of the pleadings, the Court takes judicial notice of the website as it constitutes a public record, which the Court may consider even at the motion to dismiss stage."). One glance at Defendant's public website gives away the game. The about page of Defendant's website, www.creditprotect.com/about, states that "[s]ince 1977, Credit Protection Association has specialized in effective bad debt and recovery management solutions." It further states that "CPA has been a major force in the collections industry since 1977…. [CPA] pioneered the idea of high-volume, low-balance collections[.]" Another page of its website – www.creditprotect.com/products/third-party-collections – states that "[u]tility, cable and telecom companies trust CPA, the industry leader, for third-party collections." Defendant's home page also contains a disclosure intended to be in compliance with the FDCPA. It is thus clear that Defendant's primary business is third-party collections for utilities, cable, and telecom companies. Payment obligations arising from such services and incurred by individuals would almost certainly fall under the FDCPA's definition of "debt." Accordingly, Defendant's own beliefs about the nature of its business, when coupled with Plaintiff's allegations, make it more than speculative that Defendant is a debt collector and the debt as issue was a debt covered by

the FDCPA. *Cf. McGown v. Silverman & Borenstein, PLLC*, Case No. 13-cv-748, 2014 U.S. Dist. LEXIS 12823 (D. Del. Feb. 3, 2014) (finding sufficient a non-debtor plaintiff's allegations where, among other things, defendant's website contained a disclosure in compliance with the FDCPA).

As for the substance of Plaintiff's FDCPA claim, *Davis v. Diversified Consultants, Inc.* is directly on point. 36 F. Supp. 3d 217 (D. Mass. 2014). In *Davis*, plaintiff alleged that he received 60 wrong number telephone calls in a 3-month period, some of which came after he had informed defendant that it had the wrong number. The *Davis* plaintiff brought claims for, among other things, violations of the TCPA, FDCPA, and invasion of privacy. In declining to grant defendant's motion for summary judgment on the FDCPA count, the court wrote that "sixty calls over a period of about three months is not insignificant in volume[.] … And the debt did not belong to plaintiff; defendant persisted in calling plaintiff after he had informed it of that fact and requested defendant stop calling. A reasonable jury could find a violation of § 1692d(5) on those facts." *Id.* at 228. Just like *Davis*, Plaintiff here received 60 or more telephone calls in the three-month period between April 2015 and July 2015 (when Defendant was first made aware of Plaintiff's potential claim).

In light of the above, Plaintiff has adequately pled an FDCPA claim, and Defendant's motion on this count should be denied.

**C. <u>Invasion of Privacy</u>**

In Massachusetts, "a claim of unreasonable intrusion upon one's seclusion may be actionable under [the Massachusetts Privacy Act]." *Davis*, 36 F. Supp. 3d at 228; *see also, e.g.*, *Krasnor v. Spaulding Law Office*, 675 F. Supp. 2d 208, 213 (D. Mass. 2009); *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 382 n.16 (2005).

Indeed, in *Davis*, the court denied defendant's motion for summary judgment on plaintiff's invasion of privacy claim when plaintiff complained that defendant had called him repeatedly, ignored his requests to cease calling, and acted rudely. *Id.* While there are no allegations of rude behavior here, there are allegations that Defendant called Plaintiff repeatedly, including after it was asked to stop. That the Defendant may have done so politely does not materially change Plaintiff's claims here from those found to be actionable in *Davis*. There is thus no basis to dismiss this claim at this stage.

**D. MCPA**

"A violation of the FDCPA constitutes a per se violation of ch. 93A." *French v. Corporate Receivables, Inc.*, 489 F.3d 402, 403 n.1 (1st Cir. 2007). The same goes for violations of other consumer protection statutes, including the TCPA. *See Barnes v. Fleet Nat'l Bank*, 370 F.3d 164, 176 (1st Cir. 2004) (holding violations of consumer protection statutes also violate M.G.L. ch. 93A). Defendant's only argument as to Plaintiff's MCPA claim is that Plaintiff has failed to state actionable TCPA and FDCPA claims. As Plaintiff does have such claims, Defendant's motion to dismiss this claim should be denied.

## V. CONCLUSION

In light of the above, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

**Dated:** September 2, 2015

*/s/ Anthony I. Paroniach*
Anthony I. Paronich
Broderick Law, P.C.
99 High Street, Suite 304
Boston, MA 02110
(508) 221-1510
anthony@broderick-law.com

Jeremy M. Glapion
THE GLAPION LAW FIRM, LLC
1704 Maxwell Drive, Suite 102
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com
*Subject to Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2015, a copy of the foregoing document was filed electronically. Notice of this filing will be sent be e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing.

*/s/ Anthony I. Paronich*
Anthony I. Paronich